IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| MARIO DEVONNE WASHINGTON SR., <br><br> Plaintiff, <br><br> vs. <br><br> KOREY GOPLIN, Deputy, #9177, Individual and Official capacity; JEFFREY BROWN, Sgt., #4171, Individual and Official capacity; DUSTIN CULLEN, Deputy, #9173, Individual and Official capacity; and PAUL M. VRBKA, Sheriff, Individual and Official capacity, <br><br> Defendants. | **8:22CV159** <br><br><br> **MEMORANDUM AND ORDER** |

Plaintiff, a non-prisoner, has been given leave to proceed in forma pauperis. (Filing 5.) The court conducted an initial review of Plaintiff's original Complaint (Filing 1) to determine whether summary dismissal was appropriate under 28 U.S.C. § 1915(e)(2). (Filing 7.) Plaintiff's original Complaint asserted *Bivens*[1] claims against two supposed federal agents from the Department of Homeland Security for unlawfully stopping his vehicle on a Nebraska interstate and taking, without a search warrant, Plaintiff's three cell phones and money during a search incident to Plaintiff's arrest on an Illinois warrant. After such initial review, the court dismissed Plaintiff's federal claims without prejudice and invited him to file an amended complaint to properly establish diversity jurisdiction for any state-law claims he intended to assert. (Filing 7 at CM/ECF p. 9.)

---

[1] *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971).

Plaintiff filed an Amended Complaint (Filing 8) suing four new Defendants who are alleged to be members of the York County Sheriff's Department and claiming that "Nebraska officers" misled him into believing that the officers who violated his rights were federal agents—hence, he asserted *Bivens* claims in his original Complaint. (Filing 8 at CM/ECF p. 14.) Plaintiff's Amended Complaint does not assert *Bivens* claims, but instead alleges pursuant to 42 U.S.C. § 1983 that four members of the York County Sheriff's Department violated his Fourth, Eighth, and Fourteenth Amendment rights when they performed an unreasonable search and seizure of his property, subjected him to cruel and unusual punishment, and denied his right to equal protection and due process. (Filing 8 at CM/ECF pp. 3, 14.)

## I. SUMMARY OF AMENDED COMPLAINT

Plaintiff, who claims to be an Illinois resident, sues officers of the York County Sheriff's Department for helping police in Galesburg, Illinois, frame Plaintiff for attempted murder by sending them evidence collected in Nebraska during a traffic stop of Plaintiff. Plaintiff alleges that police officers in Illinois shot a man named Russell Calhoun in the head on August 1, 2020, but then fabricated an attempted-murder charge against Plaintiff after they found Plaintiff's driver's license in Calhoun's pocket after the shooting. Plaintiff and Calhoun were friends.

Plaintiff claims that Defendants Goplin and Brown, with assistance from Defendant Cullen, stopped Plaintiff on the interstate near York, Nebraska, on October 13, 2021, for a "fabricated lane change" and "signal violation." During the stop, Goplin discovered that Plaintiff was carrying a "fake I.D." from California. Goplin then removed Plaintiff's wallet (which contained a debit card and $1,504 in cash) from his pocket and arrested Plaintiff on an Illinois warrant, after which Defendant Brown took Plaintiff to the York County Jail. (Filing 8 at CM/ECF pp. 5-7.)

2

Plaintiff alleges that Defendants Goplin and Cullen also took, without a warrant, Plaintiff's proof of insurance, car registration, wallet, debit card, and three cell phones that supposedly contained evidence that Galesburg, Illinois, police—not Plaintiff—murdered Russell Calhoun and nude photos of Plaintiff and his fiancé. Plaintiff states that Goplin returned the vehicle registration and proof of insurance to him after taking the paperwork home for "several days"; only $933.48 of the $1,504 that was in Plaintiff's wallet was turned over to the York County Jail Administrator when Plaintiff was jailed; and Goplin sent the cell phones to the Galesburg, Illinois, police because "he did not want no part of the Illinois corruption."

After Plaintiff filed complaints about his missing property, Defendant Vrbka reviewed the complaints and "cover[ed] for his fellow officer," claiming the vehicle paperwork was temporarily "misplaced" and the cell phones had been seized and held as evidence at the request of Illinois law-enforcement authorities. He found no wrongdoing on the part of his officers. Plaintiff alleges the Defendants were trying to "cover[] up for official misconduct" on the part of the Galesburg, Illinois, police who killed Russell Calhoun. Plaintiff states that he was imprisoned from October 13, 2021, to December 14, 2021, when "all fabricated charges were dismissed by Illinois."

Plaintiff requests $400,000 in damages.

## II.  STANDARDS ON INITIAL REVIEW

The court is required to review in forma pauperis complaints to determine whether summary dismissal is appropriate. *See* 28 U.S.C. § 1915(e). The court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

3

Pro se plaintiffs must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved." *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (internal quotation marks and citations omitted). However, "[a] pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted).

## III.  DISCUSSION

### A.  Defendants in Official Capacities

Plaintiff sues the York County sheriff, two deputies, and a sergeant in both their individual and official capacities. Plaintiff's claims against the sheriff and his staff in their official capacities are actually claims against York County itself. *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) ("A suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent."); *Parrish v. Luckie*, 963 F.2d 201, 203 n.1 (8th Cir. 1992) ("Suits against persons in their official capacity are just another method of filing suit against the entity. A plaintiff seeking damages in an official-capacity suit is seeking a judgment against the entity." (citation omitted)).

In *Monell v. Department of Social Services*, 436 U.S. 658 (1978), the Supreme Court held that a municipality (or other local government unit) can be liable under 42 U.S.C. § 1983 if an "action pursuant to official municipal policy of some nature caused a constitutional tort." *Id.* at 691. To prevail on a claim alleged against the

4

county, Plaintiff must show that the constitutional violation resulted from (1) an official "policy," (2) an unofficial "custom," or (3) a deliberately indifferent failure to train or supervise. *Corwin v. City of Independence*, 829 F.3d 695, 699 (8th Cir. 2016).

"Official policy involves 'a deliberate choice to follow a course of action . . . made from among various alternatives' by an official who has the final authority to establish governmental policy." *Jane Doe A By & Through Jane Doe B v. Special Sch. Dist. of St. Louis Cty.*, 901 F.2d 642, 645 (8th Cir. 1990) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)).

> Alternatively, a plaintiff may establish municipal liability through an unofficial custom of the municipality by demonstrating "(1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) that plaintiff was injured by acts pursuant to the governmental entity's custom, *i.e.*, that the custom was a moving force behind the constitutional violation."

*Malone v. Hinman*, 847 F.3d 949, 955 (8th Cir. 2017) (quoting *Corwin*, 829 F.3d at 699-700). A municipal-liability claim based on a theory of inadequate training or supervision is simply an extension of a claim based on a "policy" or "custom" theory of municipal liability. *Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018).

Here, Plaintiff's allegations against York County Sheriff's staff in their official capacities—which are in reality claims against York County—fail to state a claim upon which relief can be granted because he makes no allegations whatsoever that the county's policy, custom, or its sheriff's failure to properly train or supervise his staff caused the violation of his constitutional rights. Plaintiff will be given leave to file a Second Amended Complaint to make such allegations if he can truthfully and plausibly do so.

**B.  Defendants in Individual Capacities**

**1.  Fourth Amendment Claim**

Plaintiff alleges that the Defendants in their individual capacities illegally stopped him while he was traveling in his vehicle on a Nebraska interstate; performed a warrantless search of his car; and seized without a warrant his wallet and its contents, his vehicle registration and proof of insurance, and three cell phones found in his car. The Fourth Amendment, applicable to the States through the Fourteenth Amendment, provides: "The right of the people to be secure in their persons . . . and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause . . . particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. Amend. IV. A 42 U.S.C. § 1983 claim based on the Fourth Amendment requires a plaintiff to demonstrate that a search or seizure occurred, and the search or seizure was unreasonable. *Clark v. Clark*, 926 F.3d 972, 977 (8th Cir. 2019).

**a.  The Traffic Stop**

While Defendants would have been legally permitted to perform a traffic stop of Plaintiff's vehicle for any traffic violation, *United States v. Hanel*, 993 F.3d 540, 543 (8th Cir. 2021) (a traffic violation—however minor—creates probable cause to stop vehicle), Plaintiff here alleges that the supposed traffic violations were "fabricated." To comply with the Fourth Amendment, "a traffic stop must be justified by 'reasonable suspicion . . . that criminal activity may be afoot. Reasonable suspicion requires a particularized and objective basis for suspecting the particular person stopped of criminal activity." *Saunders v. Thies*, 38 F.4th 701, 710 (8th Cir. 2022) (internal quotation marks and citations omitted). Because Plaintiff plausibly alleges that the Defendants' stop of Plaintiff's vehicle was not supported by reasonable suspicion, this claim may go forward.

6

## b.  The Search of the Vehicle

It was permissible to expand the traffic stop into an investigative stop when the Defendants discovered that there was an Illinois warrant out for Plaintiff's arrest and after the officers discovered that Plaintiff had presented false identification. *United States v. Gomez Serena*, 368 F.3d 1037, 1041 (8th Cir. 2004) (officer properly expanded traffic stop into investigative stop unrelated to traffic offense when driver had no driver's license and driver's alleged name did not match license tag in car window or her tattoo). However, whether the Defendants were permitted to perform a search of Plaintiff's car incident to his arrest on the Illinois warrant depends upon whether it was "reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle." *Arizona v. Gant*, 556 U.S. 332, 343 (2009) (internal quotation marks and citations omitted).

To the extent the search at issue could be characterized as a warrantless inventory search prior to the impoundment of Plaintiff's vehicle, its constitutionality depends upon whether it was "done pursuant to standard police procedures and for the purpose of protecting the car and its contents. [P]olice may exercise discretion to impound a vehicle, so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity." *United States v. Betterton*, 417 F.3d 826, 830 (8th Cir. 2005) (internal quotation marks and citations omitted).

Whether the Defendants reasonably believed that evidence related to the Illinois offense for which Plaintiff was arrested might have been found in his car and/or whether the search was performed pursuant to standard police procedure to protect Plaintiff's car and its contents while he was imprisoned are issues to be decided later in this litigation. But for purposes of initial review, Plaintiff has plausibly stated a Fourth Amendment claim related to the search of his vehicle following the traffic stop.

### c.  The Seizure of Items in Plaintiff's Vehicle

Plaintiff alleges that the Defendants improperly seized money from Plaintiff's wallet, his vehicle registration, his proof of insurance, and three cell phones[2] upon his arrest and transportation to jail. Whether these items were lawfully seized incident to Plaintiff's arrest or as the result of an inventory search hinges on whether the searches themselves were lawful. *See, e.g.*, *United States v. Roberts*, No. CRIM. 12-196(1), 2012 WL 5415386, at *1 (D. Minn. Nov. 6, 2012), *aff'd,* 787 F.3d 1204 (8th Cir. 2015) (because probable cause existed for arrest of driver, seizure of evidence as result of inventory search of his car was constitutional); *United States v. Chavez*, No. 11-00002-01-CR-W-ODS, 2011 WL 3924872, at *1 (W.D. Mo. Aug. 24, 2011), *report and recommendation adopted,* No. 11-00002-01-CR-W-ODS, 2011 WL 3924882 (W.D. Mo. Sept. 7, 2011) (evidence seized pursuant to lawful inventory search need not be suppressed); *United States v. Harris*, No. CRIM. 10-323, 2011 WL 2261302, at *10 (D. Minn. Apr. 8, 2011), *report and recommendation adopted,* No. CRIM. 10-323, 2011 WL 2223744 (D. Minn. June 8, 2011) (evidence seized from impounded car following arrest of defendant need not be suppressed because evidence was seized via lawful inventory search and automobile exception to warrant requirement).

As stated above, Plaintiff has plausibly stated a Fourth Amendment claim with regard to the constitutionality of the search of his vehicle following the traffic stop. It follows, then, that Plaintiff has also stated a Fourth Amendment claim regarding the seizure of items found in the vehicle during the search.

---

[2] There is no allegation that the Defendants actually searched the digital data on Plaintiff's cell phones, which would have required a warrant. *Riley v. California*, 573 U.S. 373 (2014).

## 2. Eighth Amendment Claim

Plaintiff's Amended Complaint simply alleges, "8th amendment prohibits cruel and unus[u]al punishment." (Filing 8 at CM/ECF p. 3.)[3] Plaintiff's complete failure to plead any factual content related to this claim prevents the court from reasonably inferring that any Defendant is subject to liability, thereby requiring dismissal of this claim. *Twombly*, 550 U.S. at 569-70; *Iqbal*, 556 U.S. at 678.

Furthermore, Plaintiff's Amended Complaint as to this claim fails to meet the minimal pleading standard in Federal Rule of Civil Procedure 8, which requires that complaints contain "a short and plain statement of the claim showing that the pleader is entitled to relief" and that "[e]ach allegation . . . be simple, concise, and direct." Fed. R. Civ. P. 8(a)(2), (d)(1). A complaint must state enough to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555).

Plaintiff will be given leave to file a Second Amended Complaint to properly allege a Fourteenth Amendment claim related to his conditions of confinement if he can truthfully do so.

## 3. Fourteenth Amendment Claims

### a. Equal Protection

Plaintiff alleges that the Defendants violated his right to equal protection when they sent his three cell phones to the Galesburg, Illinois, police department, as part

---

[3] As an initial matter, because Plaintiff was a pretrial detainee at the relevant time, his purported section 1983 claim would not be analyzed under the Eighth Amendment, but under the Fourteenth Amendment's Due Process Clause. As a practical matter, though, this makes little difference because pretrial detainees are entitled to the same level of protection under the Fourteenth Amendment as imprisoned convicts under the Eighth Amendment. *Kahle v. Leonard*, 477 F.3d 544, 550 (8th Cir. 2007).

of Russell Calhoun's murder investigation which, in turn, caused Plaintiff to be imprisoned in Nebraska from October 2021 to December 2021, when the "fabricated charges were dismissed by Illinois." (Filing 8 at CM/ECF p. 14.)

"The Equal Protection Clause of the Fourteenth Amendment . . . is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Where, as here, a plaintiff has not shown discrimination based on membership in a class or group, the Supreme Court's "cases have recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Mensie v. City of Little Rock*, 917 F.3d 685, 692 (8th Cir. 2019) (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). "To be similarly situated for purposes of a class-of-one equal-protection claim, the persons alleged to have been treated more favorably must be identical or directly comparable to the plaintiff *in all material respects.*" *Robbins v. Becker*, 794 F.3d 988, 996 (8th Cir. 2015) (emphasis supplied) (quoting *Reget v. City of La Crosse*, 595 F.3d 691, 695 (7th Cir. 2010)).

Here, Plaintiff makes no allegations whatsoever that he was treated differently than other similarly situated detainees. Plaintiff will be given leave to file a Second Amended Complaint to allege facts stating an equal-protection claim, in the absence of which this claim will be dismissed.

### b.  Deprivation of Property Without Due Process

Plaintiff complains that the Defendants deprived him of his property (three cell phones, $570.52, wallet, debit card) without due process of law. Plaintiff does not state a claim for violation of the Due Process Clause because the state of Nebraska provides an adequate post-deprivation remedy, including actions for conversion and replevin, and Plaintiff does not allege that such remedies were inadequate. *See Hudson v. Palmer*, 468 U.S. 517, 530-33 (1984) (if deprivation of property by prison officials is intentional and state provides adequate post-

10

deprivation remedy, there is no due-process violation); *Clark v. Kansas City Missouri Sch. Dist.*, 375 F.3d 698, 702 (8th Cir. 2004) ("When a state employee's unauthorized, random acts deprive a person of property, the state employee's acts do not violate the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." (internal quotation marks and citations omitted)); *Allen v. City of Kinloch*, 763 F.2d 335, 337 (8th Cir. 1985) (stating that plaintiff seeking return of personal property under 42 U.S.C. § 1983 failed to establish any violation of his constitutional rights because he could obtain adequate relief by filing a replevin action under state law); *Swearengin v. Chamberlain*, No. 4:22-CV-403, 2022 WL 16527241, at *10 (E.D. Mo. Oct. 28, 2022) ("although the due process clause may be implicated when a detained individual suffers a loss of property, if the taking of property is intentional and the state provides an adequate post-deprivation remedy, there is no violation of due process); *Pittman v. Thurston*, No. 6:22-CV-06049, 2022 WL 2446244, at *3 (W.D. Ark. June 22, 2022), *report and recommendation adopted,* No. 6:22-CV-06049, 2022 WL 2442789 (W.D. Ark. July 5, 2022) ("Because Plaintiff may seek redress in Arkansas state courts for his claim of lost property, he has no claim pursuant to § 1983"); *Zelenka v. Pratte*, 912 N.W.2d 723, 728 (Neb. 2018) (elements of replevin claim under Nebraska law); *Brook Valley Ltd. P'ship v. Mut. of Omaha Bank*, 825 N.W.2d 779, 787 (Neb. 2013) (elements of conversion under Nebraska law).

Therefore, this claim will be dismissed without prejudice for failure to state a claim upon which relief can be granted.

### 4. Possible Conspiracy Claims

Finally, Plaintiff alleges that the Defendants "conspired with Galesburg, Illinois to take Exculpatory evidence from Plaintiff . . . so that Illinois officers could not be brought to justice for the illegal acts they took against Mr. Calhoun." (Filing 8 at CM/ECF p. 13.) These allegations alone do not state a plausible claim of conspiracy against the Defendants. "Without some further factual enhancement [a

11

naked assertion of conspiracy] stops short of the line between possibility and plausibility of entitlement to relief. . . . Without factual enhancement, these naked allegations are merely legal conclusions. A conspiracy claim requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made." *Faulk v. City of St. Louis, Missouri*, 30 F.4th 739, 747-48 (8th Cir. 2022) (internal quotation marks and citations omitted).[4] *See also Stamm v. Cnty. of Cheyenne, Nebraska*, 326 F. Supp. 3d 832, 861 (D. Neb. 2018) ("[T]o sustain a conspiracy claim under either § 1983 or § 1985, a plaintiff must allege with particularity specific facts indicating a meeting of the minds, meaning a mutual understanding among the alleged conspirators to take actions to an unconstitutional end. Here, Plaintiffs only state the formulaic legal elements of a conspiracy claim. None of their specific factual allegations point to or suggest a meeting of the minds amongst the Defendants, as opposed to discrete, individual alleged acts by them not done in concert." (internal quotation marks and citations omitted)).

---

[4] It is not clear whether Plaintiff attempts to assert a conspiracy claim under 42 U.S.C. § 1983 or § 1985.

> For a § 1983 conspiracy claim against a particular officer, a plaintiff must show that the officer conspired with others to deprive [the plaintiff] of a constitutional right; that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and that the overt act injured [the plaintiff]. Further, the plaintiff must prove a deprivation of a constitutional right or privilege in order to prevail on a § 1983 civil conspiracy claim. For a § 1985 conspiracy claim, a plaintiff must show that defendants reached an agreement to violate the plaintiff's constitutional rights. Just as with a § 1983 conspiracy claim, [a]bsent a constitutional violation, there is no actionable conspiracy claim.

*Saunders v. Thies*, 38 F.4th 701, 715 (8th Cir. 2022) (internal quotation marks and citations omitted).

Plaintiff will be given leave to file a Second Amended Complaint to properly state a conspiracy claim, if the facts support such a claim.

## IV.  CONCLUSION

Plaintiff will be given leave to file a Second Amended Complaint to allege 42 U.S.C. § 1983 claims against the Defendants in their official capacities and, as to the Defendants in their individual capacities, a Fourteenth Amendment claim related to Plaintiff's conditions of confinement; a Fourteenth Amendment equal-protection claim; and a conspiracy claim.

Plaintiff's Fourth Amendment claim regarding the traffic stop, search of his vehicle, and seizure of items found in his vehicle and on Plaintiff's person may go forward, but service of process will not be ordered until the court completes initial review of Plaintiff's Second Amended Complaint.

Plaintiff's Fourteenth Amendment claim for deprivation of property without due process of law is dismissed without prejudice for failure to state a claim upon which relief can be granted.

IT IS ORDERED:

1.    Plaintiff shall have until **December 12, 2022**, to file a Second Amended Complaint to allege 42 U.S.C. § 1983 claims against the Defendants in their official capacities and, as to the Defendants in their individual capacities, a Fourteenth Amendment claim related to Plaintiff's conditions of confinement; a Fourteenth Amendment equal-protection claim; and a conspiracy claim.

2.    Failure to file a Second Amended Complaint within the time specified by the court will result in the court ordering service of process on the Defendants in their individual capacities as to Plaintiff's Fourth Amendment claim regarding the

traffic stop, search of Plaintiff's vehicle, and seizure of items found in the vehicle and on Plaintiff's person.

3.      Plaintiff's Fourteenth Amendment claim for deprivation of property without due process of law is dismissed without prejudice for failure to state a claim upon which relief can be granted.

4.      **Plaintiff is warned that a Second Amended Complaint will supersede, not supplement, his Complaint and Amended Complaint**. Failure to consolidate all claims into **<u>one document</u>** may result in the abandonment of claims.

5.      The court reserves the right to conduct further review of Plaintiff's claims pursuant to 28 U.S.C. § 1915(e) in the event he files a Second Amended Complaint.

6.      The Clerk of the Court is directed to set a pro se case management deadline using the following text: **December 12, 2022**—Second Amended Complaint due.

7.      Plaintiff shall keep the court informed of his current address at all times while this case is pending. Failure to do so may result in dismissal without further notice.

DATED this 10th day of November, 2022.

BY THE COURT:

*Richard G. Kopf*

Richard G. Kopf
Senior United States District Judge