IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| MARIO DEVONNE WASHINGTON, SR.,<br><br>Plaintiff,<br><br>vs.<br><br>KOREY GOPLIN, Deputy, #9177, Individual capacity, et al.,<br><br>Defendants. | 8:22-CV-159<br><br>MEMORANDUM AND ORDER |

The plaintiff, Mario Washington, is suing the York County Sheriff and three other law enforcement officers pursuant to 42 U.S.C. § 1983, for claims arising from the alleged violation of Washington's Fourth Amendment rights. The defendants move for summary judgment, and the plaintiff has filed cross-motions for summary judgment. The defendants' motions will be granted and the plaintiff's motions denied, resulting in dismissal of the plaintiff's complaint.

I. STANDARD OF REVIEW

Summary judgment is proper if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of informing the Court of the basis for the motion, and must identify those portions of the record which the movant believes demonstrate the absence of a genuine issue of material fact. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). If the movant does

so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial. *Id.*

On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. *Id.* Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the evidence are jury functions, not those of a judge. *Id.* But the nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts. *Id.* In order to show that disputed facts are material, the party opposing summary judgment must cite to the relevant substantive law in identifying facts that might affect the outcome of the suit. *Quinn v. St. Louis Cty.*, 653 F.3d 745, 751 (8th Cir. 2011). The mere existence of a scintilla of evidence in support of the nonmovant's position will be insufficient; there must be evidence on which the jury could conceivably find for the nonmovant. *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 791-92 (8th Cir. 2011). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Torgerson*, 643 F.3d at 1042.

## II. BACKGROUND

This case began with a traffic stop initiated by defendant Korey Goplin, a York County sheriff's deputy, on Interstate 80 near Aurora, Nebraska. Filing 31 at 2-3.[1] Goplin saw a silver Jaguar sedan make an unsignaled lane change,

---

[1] Pursuant to NECivR 56.1, a party moving for summary judgment must include in its brief a statement of material facts about which the movant contends there is no dispute, and the party opposing summary judgment must include in its brief a concise response to that statement of facts, noting any disagreement. Properly referenced material facts in the

in violation of Neb. Rev. Stat. § 60-6,161(2). Filing 31 at 3.[2] The driver, later revealed to be the plaintiff, presented Goplin with what he recognized to be a forged driver's license. Filing 31 at 4. Goplin asked the plaintiff to exit his vehicle and sit in Goplin's cruiser, where the plaintiff eventually admitted his real name. Filing 31 at 5. The plaintiff also admitted that he was wanted for murder—and, indeed, there was an active Illinois warrant for the plaintiff's arrest. Filing 31 at 5.

 The plaintiff's warrant was for serious, violent offenses—"Aggravated Battery, Aggravated Discharge of Firearm, Attempted First Degree Murder and Possession of Weapon by Felon"—so backup for Goplin was dispatched. Filing 31 at 5. Goplin handcuffed the plaintiff, but let him call his mother while waiting for backup. Filing 31 at 6. Goplin retrieved the plaintiff's phone from his car, with his permission, so he could make the call. Filing 31 at 6. Goplin also called for a tow company to impound the plaintiff's Jaguar. Filing 31 at 6.

 Defendant Jeffrey Brown, an officer of the York Police Department, arrived, and Goplin had the plaintiff move to Brown's cruiser. Filing 31 at 6. Goplin searched the plaintiff and emptied his pockets of a wallet, keys, and some money. Filing 31 at 6. Defendant Dustin Cullen, another York County sheriff's deputy, also arrived. The plaintiff's keys and money were placed in Brown's cruiser with the plaintiff, but Goplin kept the wallet because he

---

movant's statement are considered admitted unless controverted in the opposing party's response. NECivR 56.1(b)(1)(B).

[2] The Court recognizes that elsewhere in his many filings, the plaintiff asserted that he "did signal correct and Deputy Korey Goplin fabricated the traffic violation," apparently because Goplin was "already waiting to stop the Plaintiff" based on an alleged conspiracy with law enforcement in Illinois. Filing 40 at 1-2. For reasons that will be explained in more detail below, the plaintiff did not comply with this Court's rules about asserting and disputing material facts, and Goplin's account of the traffic stop is procedurally undisputed.

needed the plaintiff's personal information to complete a booking form. Filing 31 at 7. The plaintiff was allowed to keep, and to keep using, his phone while he sat in Brown's cruiser. Filing 31 at 7. Goplin retrieved the plaintiff's jacket from the Jaguar at his request and gave it to him. Filing 31 at 8. The plaintiff had two other phones in the Jaguar, but he didn't ask for them so they stayed in his car. Filing 31 at 8.

Brown took the plaintiff to the York County Jail and booked him on the Illinois warrant. Filing 31 at 8. Brown inventoried the plaintiff's keys, hat, jacket, phone, and some cash. Filing 36 at 4. Meanwhile, Goplin started an inventory search on the Jaguar, but then decided to finish the search after the car was towed. Filing 31 at 7. The tow truck arrived, and Goplin gave the plaintiff's keys to the tow truck driver. Filing 31 at 8. Goplin and Cullen followed the tow truck to the impound lot, where they inventoried the contents of the Jaguar pursuant to the York County Sheriff's policy for "Towing/Inventory of Vehicles." Filing 31 at 8-11. The plaintiff's other phones were taken from the car. Filing 31 at 11.

During the inventory of the Jaguar, Goplin was contacted by an investigator from the Galesburg, Illinois police department, which was responsible for the plaintiff's active warrant. Filing 31 at 11. The investigator asked about weapons and phones, and Goplin told him that they had three phones total, but no weapons. Filing 31 at 11. The Galesburg investigator asked for the phones, so Goplin gathered the two phones from the car and the phone the plaintiff had kept, which was by now in his jail property, and mailed them to Galesburg. Filing 31 at 11. No one in York County searched the phones. Filing 31 at 11.

The next day, the impound lot called Goplin and told him the owner of the Jaguar—not the plaintiff—was trying to retrieve it, but was missing the

- 4 -

registration and insurance card. Filing 31 at 12. Goplin realized he had forgotten about those items and left them in his cruiser, so he drove them to the sheriff's office and gave them to the car's owner. Filing 31 at 13.

The plaintiff submitted a "Citizen Complaint Form" to the York County Sheriff's Office claiming that Brown had stolen his property and seized property without a search warrant. Filing 31-2. Vrbka investigated and determined the claims were unfounded. Filing 31 at 13-14. The plaintiff's administrative appeal also found the claims were unfounded. Filing 31 at 14.

In this Court, the plaintiff initially sued "Agent Brown" and "Agent Brown's Supervisor," of "Homeland security," alleging claims arising from an unlawful traffic stop, search and seizure of his personal property, and participation in a broad conspiracy to frame the plaintiff for murder in Illinois. Filing 1. On initial review, this Court dismissed the plaintiff's federal claims but gave him 30 days to file an amended complaint. Filing 7.

The plaintiff's operative amended complaint alleged many of the same claims, but identified Goplin, Brown, Cullen, and Sheriff Vrbka as the defendants. Filing 8. On initial review, the Court found plausible claims only as to the plaintiff's "Fourth Amendment claim regarding the traffic stop, search of his vehicle, and seizure of items found in his vehicle and on Plaintiff's person." Filing 11 at 13. The plaintiff was offered leave to file a second amended complaint to try and replead his other claims, but he didn't, so his Fourth Amendment claims proceeded to service of process. Filing 15.

All the defendants answered the complaint. Filing 20; filing 25. A final progression order was entered that set a dispositive motions deadline for August 9, 2023. Filing 29 at 2. That order also expressly cautioned the parties that they "must comply with the provisions of NECivR 7.1 and NECivR 56.1 when filing summary judgment motions." Filing 29 at 2.

Goplin, Cullen, and Vrbka—the York County defendants—filed their motion for summary judgment on May 30, 2023. Filing 30. Brown's separate motion followed on June 9. Filing 35. The plaintiff responded with two filings on June 20. The first was a "Motion to request Denial of Summary Judgement regarding Defendant Jeffrey Brown and Co-Defendants" (filing 39), which the Court understood to be the plaintiff's opposition to the defendants' summary judgment motions. The second was "Plaintiff's Motion for Summary Judgment" (filing 40), which the Court understood to be his cross-motion for summary judgment. Then, on January 2, the plaintiff filed another motion for summary judgment. Filing 46.

### III. DISCUSSION

#### 1. Procedural History

To begin with, it's important to explain how the procedural history of this case establishes a record. Both the York County defendants and Brown, when they filed their motions for summary judgment, complied with this Court's local rules by filing a separate statement of material facts. NECivR 56.1(a)(1). But the plaintiff did not comply with this Court's rules when he responded. The closest he came to specifically disputing the defendants' statements of undisputed material facts as required by this Court's rules was questioning some of the averments found in Brown's supporting affidavit. (The Court will address that more specifically below.) And the Court's rules are quite clear:

**(A)   Form; Citation to Record.**
>   The party opposing a summary judgment motion must file a brief and a separate statement of concise responses to the moving party's statement of material facts. The statement should consist of separate numbered paragraphs

> corresponding to the numbered paragraphs in the movant's brief, and must include pinpoint references to affidavits, pleadings, discovery responses, deposition testimony (by page and line), or other materials upon which the opposing party relies.
>
> **(B)  Contents of Response.**
>
> Each response must clearly state that the asserted fact is:
>
> (i)    undisputed,
>
> (ii)   disputed, or
>
> (iii)  undisputed in part and disputed in part.
>
> <u>Properly referenced material facts in the movant's statement are considered admitted unless controverted in the opposing party's response.</u>

NECivR 56.1(b)(1). Even a *pro se* litigant must follow the Court's local rules. *See James v. Cheatham*, 816 F. App'x 37 (8th Cir. 2020); *Davis v. Webb*, 590 F. App'x 655, 656 (8th Cir. 2015); *Bennett v. Dr Pepper/Seven Up, Inc.*, 295 F.3d 805, 808 (8th Cir. 2002); *Beck v. Skon*, 253 F.3d 330, 332-33 (8th Cir. 2001). And the plaintiff was specifically advised, in the Court's progression order, about the specific local rule he was expected to follow. *See Burgs v. Sissel*, 745 F.2d 526, 528 (8th Cir. 1984) (pro se litigant should receive meaningful notice of what is expected of him). The plaintiff's narrative responses to the defendants' clear, enumerated statements of fact—often intertwined with conspiracy theorizing that didn't survive initial review and in any event lack founded evidentiary support—are plainly inconsistent with the rule's requirements.

Nor did the plaintiff's own motion for summary judgment—his first, timely one, that is—comply with the Court's rules:

**(1) Concise Statement of Material Facts.**

A summary judgment motion shall be supported by a brief and a separate statement of material facts about which the moving party contends there is no genuine issue to be tried and that entitles the moving party to judgment as a matter of law. A fact is "material" if pertinent to the outcome of the issues identified in the summary judgment motion. <u>Failure to submit a statement of material facts may be grounds to deny the motion.</u>

**(2) Form; Citation to Record.**

The statement of material facts should consist of short numbered paragraphs. Each numbered paragraph shall contain pinpoint references to affidavits, pleadings, discovery responses, deposition testimony (by page and line), or other materials that support the material facts stated in the paragraph. Failure to provide citations to the exact locations in the record supporting the factual allegations may be grounds to deny the motion.

**(3) Content.**

The statement of material facts must describe the parties and recite all facts supporting the court's venue and jurisdiction. The statement must not contain legal conclusions.

**(4) Filing.**

The statement of material facts shall be filed in a separate document from the motion for summary judgment and brief in support of the motion. . . .

NECivR 56.1(a). The plaintiff's motion is deficient in nearly every respect: It isn't separate, it doesn't contain short numbered paragraphs, it cites only to itself, and the plaintiff's unstructured narrative is replete with asserted legal

conclusions. *See* filing 40. (Not to mention that it, too, fails to recognize which claims got past initial review and which didn't.) And that non-compliance with the Court's rules gave the defendants no way to meaningfully admit or dispute the facts asserted by the plaintiff, utterly defeating the point of the rule. *See Nw. Bank & Tr. Co. v. First Ill. Nat'l. Bank*, 354 F.3d 721, 725 (8th Cir. 2003) ("Local Rule 56.1 exists to prevent a district court from engaging in the proverbial search for a needle in the haystack").

Finally, the plaintiff's second motion for summary judgment—still non-compliant with the local rules—was also untimely. Filing 46. And the Court is entitled to enforce that deadline. *See Soliman v. Johanns*, 412 F.3d 920, 922 (8th Cir. 2005).

Accordingly, the Court will deny the plaintiff's motions for summary judgment, and will consider the defendants' statements of undisputed material fact to have been substantially uncontroverted by the plaintiff.

2. YORK COUNTY DEFENDANTS

There are three York County defendants, but they play very different parts in the story. And it's important to remember which claims—all Fourth Amendment claims—were held to pass initial review: (1) an unlawful traffic stop, (2) an unlawful search of the vehicle, and (3) unlawful seizure of the plaintiff's property. Filing 11 at 6-8.

(a) Deputy Goplin

First, the traffic stop. The undisputed material facts establish that Goplin saw a traffic violation—and any traffic violation, regardless of its perceived severity, provides an officer with probable cause to stop the driver. *United States v. Betts*, 88 F.4th 769, 773 (8th Cir. 2023). Having made a valid traffic stop, Goplin was permitted to conduct unrelated checks into criminal

- 9 -

activity beyond the traffic infraction. *See id*. In this case, that investigation was hardly prolonged, because other criminal activity presented itself as soon as Goplin saw a fake driver's license. (Which the plaintiff doesn't dispute.) *See United States v. Newland*, 246 F. App'x 180, 188 (4th Cir. 2007); *see also Kansas v. Glover*, 140 S. Ct. 1183, 1188 (2020); *cf. United States v. Brunt*, 35 F. App'x 285, 286 (8th Cir. 2002).

And once Goplin learned of an active warrant for the plaintiff's arrest, it attenuated any taint associated with the allegedly unlawful traffic stop. *See Utah v. Strieff*, 579 U.S. 232 (2016). The warrant was valid, it predated Goplin's investigation, and it was unconnected with the stop. *Id*. at 240. At that point, Goplin was not only permitted to arrest the plaintiff—he was *obligated* to do so. *Id*. That, of course, also permitted a search of the plaintiff incident to his arrest. *Id*. at 240-41.

Once the plaintiff was arrested, and the Jaguar was effectively unattended on the shoulder of the Interstate, impounding the vehicle was proper. *See United States v. Perez*, 29 F.4th 975, 984 (8th Cir. 2022); *United States v. Harris*, 795 F.3d 820, 822 (8th Cir. 2015); *United States v. Williams*, 777 F.3d 1013, 1016 (8th Cir. 2015); *United States v. Arrocha*, 713 F.3d 1159, 1163 (8th Cir. 2013); *United States v. Le*, 474 F.3d 511, 514 (8th Cir. 2007); *United States v. Petty*, 367 F.3d 1009, 1012 (8th Cir. 2004). And at that point, Goplin was permitted to inventory its contents without a warrant or probable cause. *United States v. Taylor*, 636 F.3d 461, 464 (8th Cir. 2011).

> The inventory search exception is necessary for the protection of the owner's property while it remains in police custody; the protection of the police against claims or disputes over lost or stolen property; and the protection of the police from potential danger. Because the police are engaging in their community

>caretaking function—not their criminal investigatory function—in meeting these needs, they do not need a warrant or probable cause. The search of a vehicle to inventory its contents must nevertheless be reasonable under the totality of the circumstances, and may not be a ruse for a general rummaging in order to discover incriminating evidence. The reasonableness requirement is met when an inventory search is conducted according to standardized police procedures, which generally remove the inference that the police have used inventory searches as a purposeful and general means of discovering evidence of a crime.

*Id.* (citations and quotations omitted).

The undisputed facts here establish that the inventory search, and initial seizure of items in the vehicle, were conducted pursuant to York County police procedures.³ And, of course, property on the plaintiff's person could also be lawfully seized when he was lawfully taken into custody. *See United States v. Edwards*, 415 U.S. 800, 808 (1974); *United States v. Lester*, 647 F.2d 869, 874 (8th Cir. 1981). Nor does it matter that some of the property was provided to police in another jurisdiction: "Evidence legally obtained by one police agency may be made available to other such agencies without a warrant, even for a use different from that for which it was originally taken." *Lester*, 647 F.2d at 875; *see also* 1 Wayne R. LaFave, Search & Seizure § 1.5(c) n.167 (6th ed., Mar. 2024 update) (collecting cases).

---

³ The Court sees no basis to distinguish the seizure of the registration and proof of insurance from the other property taken. But in addition, there's no basis to think that the plaintiff, who wasn't the owner of the vehicle, was cognizably injured by it.

In sum, the undisputed facts establish that Goplin didn't violate the plaintiff's Fourth Amendment rights. But Goplin also claims qualified immunity. Filing 32 at 4-6. Qualified immunity shields public officials performing discretionary functions from liability for conduct that does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Parker v. Chard*, 777 F.3d 977, 979 (8th Cir. 2015); *see Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012); *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly, and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. *Pearson*, 555 U.S. at 231. It gives government officials breathing room to make reasonable but mistaken judgments about open legal questions and protects all but the plainly incompetent or those who knowingly violate the law. *Parker*, 777 F.3d at 979-80.

In determining whether a government official is entitled to qualified immunity, the Court asks (1) whether the facts alleged establish a violation of a constitutional or statutory right and (2) whether that right was clearly established at the time of the alleged violation, such that a reasonable official would have known that his actions were unlawful. *Johnson v. Phillips*, 664 F.3d 232, 236 (8th Cir. 2011); *see Parker*, 777 F.3d at 980. Whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken. *Messerschmidt*, 565 U.S. at 546; *Pearson*, 555 U.S. at 244. The protection of qualified immunity applies regardless of whether the

government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact. *Pearson,* 555 U.S. at 231.

For a right to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. *Parker,* 777 F.3d at 980. Clearly established law is not defined at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced. *Id.*; s*ee Seymour v. City of Des Moines,* 519 F.3d 790, 798 (8th Cir. 2008). It is unnecessary to have a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate. *Parker,* 777 F.3d at 980.

Goplin has qualified immunity for two reasons. First, obviously, the Court finds that the facts don't establish a violation of a constitutional or statutory right. *See Johnson,* 664 F.3d at 236. But in addition, the plaintiff has directed the Court to no authority clearly establishing that any of the conduct at issue here violated a constitutional right. *See id.* The Court will dismiss the plaintiff's claims against him.

### (b) Deputy Cullen

All of the same applies to Deputy Cullen, whose participation in this was *at most* limited to supporting Goplin during the inventory search. *See* filing 31 at 8. Having concluded that the inventory search was lawful, the Court also finds that Cullen committed no constitutional violation and that he's entitled to qualified immunity.

### (c) Sheriff Vrbka

The basis of the plaintiff's claims against Vrbka is that he allegedly "viewed all evidence and saw no wrong doings." Filing 8 at 4. Having concluded

that Vrbka's subordinates committed no "wrong doings," the Court finds no basis for the plaintiff's claim. In addition, the only *evidence* that Vrbka was aware of any of these events is the plaintiff's citizen's complaint, which was lodged well *after* the events occurred.

A supervising officer can be liable for an inferior officer's constitutional violation only if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation. *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010); *see also Stewart v. Precythe*, 91 F.4th 944, 949 (8th Cir. 2024). The only evidence here is that Vrbka didn't directly participate, *see* filing 31-1 at 1, and there's no allegation of insufficient training or supervision. Even had Vrbka been deliberately indifferent to a constitutional violation, there's no basis to conclude his failure to act—after the fact—*caused* the injury. *See Saunders v. Thies*, 38 F.4th 701, 715 (8th Cir. 2022), *cert. denied,* 143 S. Ct. 1006 (2023).

Accordingly, Vrbka did not violate the plaintiff's constitutional rights, and is also entitled to qualified immunity.

### 3. OFFICER BROWN

Finally, the plaintiff does more specifically take issue with Brown's account of his arrest (albeit still not in the way required by this Court's rules). *See* filing 39 at 1-12. But it's not clear how much the plaintiff *factually* takes issue with—mostly, while he disagrees with Brown's claims not to have been involved in the search or arrest, that disagreement seems to rest more on what "involved" means, rather than any dispute about what Brown did or when he did it. Brown didn't arrive on the scene until the plaintiff had been handcuffed, so it's a fair interpretation to say that he didn't make the traffic stop, he didn't make the arrest, and he didn't search the car. *See* filing 38-1 at 1-2. All Brown did, as relevant to the claims here, is take the plaintiff's personal property

when he was booked into jail, *see* filing 38-1 at 2—which, as discussed above, was entirely permissible.

The plaintiff's counterarguments are hard to follow. The gist seems to be that Illinois police were conspiring to cover up a murder, that he told Goplin and Brown about it, and that because they arrested him and cooperated with Illinois police anyway they're also culpable. There's no credible or admissible evidence of any conspiracy, and the plaintiff's conspiracy claims didn't survive initial review. *See* filing 11 at 11-12. Nor is the Court aware of any authority that would establish a constitutional violation premised on a law enforcement officer's failure to credit a wanted suspect's claims that he was being set up by other law enforcement officers.[4]

Because the only cognizable claim against Brown is premised on a lawful seizure of property incident to arrest, Brown committed no constitutional violation and is, in addition, entitled to qualified immunity. *See* filing 37 at 5.

IT IS ORDERED:

1. The York County defendants' motion for summary judgment (filing 30) is granted.

2. Brown's motion for summary judgment (filing 35) is granted.

3. The plaintiff's motion to deny summary judgment (filing 39) is denied.

---

[4] The plaintiff also has persistent complaints about money that he says disappeared in police custody. *See* filing 39 at 7-9. Those claims didn't survive initial review. *See* filing 11 at 10-11.

4. The plaintiff's first motion for summary judgment (filing 40) is denied.

5. The plaintiff's second motion for summary judgment (filing 46) is denied.

6. The plaintiff's complaint is dismissed.

7. A separate judgment will be entered.

Dated this 31st day of March, 2024.

                                      BY THE COURT:

                                      John M. Gerrard
                                      Senior United States District Judge